111 So.2d 274 (1959)
Jeanette Parker TINGLE, individually, widow of W.C. Tingle, Deceased, Appellant,
v.
Doris HORNSBY, Jeanette Parker Tingle, as Administrator of the Estate of Walter C. (W.C.) Tingle, deceased, and Leslie B. Pigue and Martha Corrine Pigue, Appellees.
No. A-287.
District Court of Appeal of Florida. First District.
March 26, 1959.
Rehearing Denied May 14, 1959.
*275 Angus W. Harriett, Palatka, for appellant.
Eugene L. Eastmoore, Dowda & Millican and Earl G. Nicholson, Palatka, for appellees.
WIGGINTON, Acting Chief Judge.
This is an appeal by the widow administratrix from a summary final decree for the plaintiff-appellee, appellant's stepdaughter, pursuant to a declaratory action seeking to establish ownership of a certain contract to sell property formerly owned by the deceased husband and father of the parties, respectively.
By her complaint plaintiff appellee alleged, inter alia, that appellant had no right, title or interest in the property or the contract other than as the surviving widow of the decedent; that legal title thereto was in the decedent at his death and, therefore, passed to his estate; and that plaintiff and defendant are the sole surviving heirs-at-law. Defendant appellant's answer denied that title to the disputed contract was in the deceased individually, and alleged ownership thereof to have been in the deceased and herself as tenants by the entirety. In support of this allegation appellant recited that her work and industry were a material contribution to the value of the realty encompassed by the contract; and that because of his love and affection for her the decedent intended ownership of the contract to vest jointly as an estate by the entirety. The foregoing allegations were stricken from defendant's answer upon plaintiff's motion, and summary decree was entered for plaintiff. Both orders are attacked as constituting error on this appeal.
From the undisputed facts it appears that prior to his death on January 23, 1957, title to the realty, as well as certain personalty included in the contract to sell, was held in the deceased individually. However, on May 15, 1954, he entered into a contract to sell the land, together with the improvements and business operated thereon to the Pigues. This contract recites that decedent is the owner of the *276 property to be sold and that he chose to sell for reasons of his health, but designates both the deceased and his wife, the appellant, as "Sellers". It provides that the sellers conditionally sell to the buyers the real estate and personal property described in the contract and agree to convey the property by deed and bill of sale to the buyers upon performance of the covenants set forth in the contract, including payment by the buyers of the purchase price in the manner set forth therein. It also provides that the installments of purchase price shall be paid at the office of the sellers at Crescent City; that the title to the property and contingent right of possession shall remain in the sellers until the purchase price is paid; that in case of default in payment of the purchase price the sellers, after notice, shall have the right to declare the contract at an end and take immediate possession of the property described; and all payments theretofore made are to be retained by the sellers as liquidated damages. It further provides that the buyers are prohibited from selling or encumbering any of the property without the consent of the sellers, and the buyer will keep the property insured in a company satisfactory to the sellers with loss, if any, payable to the sellers as their interest may appear.
It has long been the law of this jurisdiction that the vendor's act in executing a contract to convey the legal title to property upon the payment of an agreed purchase price constitutes the vendee as the real beneficial owner, legal title remaining in the vendor as trustee with the obligation to convey upon compliance with the terms of the contract.[1] Under the doctrine of equitable conversion, the vendor's interest thereupon becomes personalty.[2] And, it is equally well established that personal property may be held in an estate by the entirety.[3] Such estates have been held to be vested in husband and wife in various forms of personalty.[4] It is generally held that an estate by the entirety will arise from the running of a purchase money obligation to a husband and wife jointly,[5] even though the wife's interest therein arises by virtue of a gift from her spouse.[6] Thus, it is evident that in the instant case, the decedent's fee simple interest in the subject realty was converted by operation of law to a naked legal title held as a security interest and metamorphosed into a personal property right or chose in action.
It must be remembered that we are not called upon at this juncture to determine whether the instrument here considered did in law create an estate by the entirety. The burden of our labor is confined to the question of whether the contract, when considered in light of the pleadings and proof on which the summary judgment is predicated, is sufficient as a matter of law to preclude a finding that title thereto was held by the husband and wife as an estate by the entirety.
In order to create an estate by the entirety there must exist a unity of the estate; unity of possession; unity of control; and unity in conveying or incumbering the property so held.[7] The marital relationship between the decedent and appellant in this case is not questioned. According to the language and terminology employed in the contract, both husband and wife were named as sellers, and, as such, the joint recipients of the proceeds *277 of the sale. Having been joined as sellers, it follows that any encumbrance or conveyance would also require joint action of the selling parties under the contract, since neither spouse can without the assent of the other, alien or forfeit any part of an estate by the entirety so as to defeat the rights of the other.[8] Although this principle was apparently departed from in at least one case decided by our Supreme Court[9], it has been reinstated and adhered to in subsequent cases.[10] While there is no evidence from which possession or control could be conclusively established in the instant cause, it has been held that although payments to a husband, who has reduced to his possession and control a debt due him and his wife as tenants by the entirety discharges the obligation to pay, it does not change the character of the estate existing between the husband and wife. Any funds so derived by the husband and remaining at his death pass to his surviving spouse.[11] It thus appears that the required unities are to some degree present in the contract of sale with which we are here concerned.
We have been referred to no Florida case, nor has our independent search revealed one on "all fours" with the instant cause. The cause of Jordan v. Jordan[12], decided by the Supreme Court of Arkansas, is, however, most analogous. In that case a husband and wife, jointly, executed a contract to sell property owned by the husband individually. Attached to the contract was a promissory note payable in accordance with the terms of the contract. After the husband's death a question arose as to whether the balance due on the contract was held by the sellers as tenants by the entirety. It was reasoned that, although the property was owned by the husband individually, the wife had certain inchoate dower rights therein, which, by joining the contract, she agreed to release. Under these circumstances she was held to be a party to the contract and not a mere donee. Her rights by survivorship were held to arise from her agreement to release her dower interest rather than as a donee of an interest gratuitously given by her husband. We think the existence of the promissory note in the cited case is of no consequence in distinguishing it from the instant case, since nothing was added thereby, either to the purchaser's obligation or to other terms of the contract.
However, we do not mean to hold that title to every contract of sale executed by a husband and wife jointly will be vested in them by the entirety. Whether or not such an estate is created depends upon the nature of the transaction and the intent of the parties as reflected by the language employed in the contract.[13] If by the plain language used it is clearly apparent that there was no intention to create an estate by the entirety, none will be presumed. On the other hand, if from the clear and unambiguous language of the instrument, it appears that the benefits were intended to accrue to the husband and wife jointly, such would give rise to the presumption that an estate by the entirety was intended.
We are of the opinion that the language employed in the disputed contract here considered is no more inconsistent with an intention to create an estate by the entirety than with a contrary one. In the absence of language showing clearly the intent of the parties one way or the other, it is always appropriate to investigate the facts and circumstances surrounding the transaction.[14] While evidence of love and affection and contribution by the wife are not material to the existence of an estate by the entirety, such evidence would bear upon the question of intent to create such an estate.
For the foregoing reasons we hold that the trial court erred in striking the defense interposed by the defendant widow, and in summarily decreeing that as a matter of law title to the contract in question was not vested in the deceased husband and the defendant widow as tenants by the entirety. The decree appealed from is therefore reversed and the cause remanded for further proceedings.
PEARSON, TILLMAN, and CROSBY, HAROLD B., Associate Judges, concur.
NOTES
[1] Aycock Bros. Lbr. Co. v. First National Bank of Dothan, 54 Fla. 604, 45 So. 501.
[2] Hull v. Maryland Casualty Company, Fla. 1954, 79 So.2d 517; Commissioner of Internal Revenue v. Hart, 6 Cir., 76 F.2d 864.
[3] Bailey v. Smith, 89 Fla. 303, 103 So. 833.
[4] Winters v. Parks, Fla. 1956, 91 So.2d 649; Lauderdale v. Lauderdale, Fla.App. 1957, 96 So.2d 663; Powell v. Metz, Fla. 1952, 55 So.2d 915.
[5] 26 Am.Jur. Husband and Wife, § 69.
[6] 26 Am.Jur. Husband and Wife, § 76.
[7] Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376.
[8] Supra note 3.
[9] American Central Ins. Co. v. Whitlock, 122 Fla. 363, 165 So. 380.
[10] Eg: Rader v. First National Bank in Palm Beach, Fla. 1949, 42 So.2d 1.
[11] Merrill v. Adkins, 131 Fla. 478, 180 So. 41.
[12] 1950, 217 Ark. 30, 228 S.W.2d 636.
[13] Winters v. Parks, supra note 4.
[14] Winters v. Parks, supra note 4.